UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

GARY CLIFTON SHAFFER )
)
V. ) NO. 2:12-CV-432
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. This is a judicial appeal of the Commissioner's administrative denial of disability insurance benefits under the Social Security Act. The plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 16], and the defendant Commissioner has filed a Motion for Summary Judgment [Doc. 21].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988).

Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 55 years of age at the time of the hearing before an Administrative Law Judge ["ALJ"]. He has a high school education and several years of college. There is, as will be seen under the facts and record in this case, no dispute that the only past relevant work which he can possibly perform is as a surveillance systems monitor.[1] In other words, if that job was not substantial gainful activity, or if it was and he cannot perform it, he is disabled.

Plaintiff has, as will be seen from the ALJ's findings on severe impairments and residual functional capacity ["RFC"], several serious and limiting medical and mental conditions. His medical history, since his disability onset date of June 1, 2010, is summarized in the Commissioner's brief as follows:

> The record documents that Plaintiff has degenerative disc disease, irritable bowel
> syndrome (IBS), diabetes, asthma, hearing loss, obesity, depression, and anxiety (Tr. 13, 124). The earliest medical evidence of record reveals that Plaintiff has sought treatment for various impairments at the Veterans Affairs Medical Center (VAMC) since 1997 (Tr. 170-74, 342-46), and Plaintiff indicated that he was first diagnosed with IBS in 1994 (Tr. 293). In January 2010, Plaintiff's hearing was tested at the VAMC, and the audiologist indicated that Plaintiff had a normal to moderately severe degree of hearing loss, but that there was no need for a medical follow-up for an ear or hearing problem and no effects on his daily activities (Tr. 214, 386).
> With respect to the medical evidence relevant to the period under adjudication, the
> VAMC records, dated May 12, 2010, indicate that Plaintiff went to the VAMC to

---

[1]Plaintiff disputes that this job was past relevant work and if it was, maintains that he is precluded from performing it.

follow-up on his chronic medical problems, and he complained that he still had problems with his sinuses and polyarthralgia in his back, hips, and legs (Tr. 222). The VAMC nurse practitioner who examined Plaintiff did not indicate that he was unable to work, and she indicated that he should continue treatment with his IBS, diabetes, asthma, and polyarthralgia and return in four months (Tr. 226). On May 21, 2010, Plaintiff attended a therapy session with a VAMC social worker and complained that he is "not able to physically work as much as he needs in order to pay his bills" and "talked about work[-]related stress" (Tr. 218). When he returned to the VAMC social worker on June 3, 2010, Plaintiff again indicated that he had work-related stress (Tr. 216). The VAMC social worker encouraged Plaintiff "to be as active as possible" and follow his doctor's instructions regarding exercise (Tr. 216).

On August 3, 2010, Dr. Marianne Filka conducted a consultative physical examination of Plaintiff (Tr. 293-98). Plaintiff provided a history of his IBS to Dr. Filka, and indicated that IBS was the basis of his application for Social Security disability benefits (Tr. 293). Plaintiff indicated that he has had IBS symptoms since age 22 (Tr. 293), and that the last time he went to the emergency room for his condition was in November 2007 (Tr. 293). Plaintiff also indicated that his other past medical illness included, inter alia, diabetes, hypertension, aspirin allergies, back pain, carcinoid cancer of the abdomen, sleep apnea, and peptic ulcer disease (Tr. 293-94). He told Dr. Filka that he is "currently working 24-hours a week as a security officer" (Tr. 295).

Dr. Filka did not conduct a gastrointestinal examination and none of the physical
examination results relate to Plaintiff's bowels (Tr. 296-97). The only reference to Plaintiff's bowels was Dr. Filka's reference to her abdominal examination where she noted "bowel sounds positive x4" (Tr. 296). Dr. Filka indicated Plaintiff's attention and concentration was appropriate and his "[m]ood and affect do not appear to be depressed or anxious" (Tr. 297). Dr. Filka opined that Plaintiff's greatest restricting condition was his back pain and recommended no lifting, pushing, or pulling over 30 pounds and no operation of heavy equipment (Tr. 298). She also opined that Plaintiff "should always have access to bathroom facilities in a reasonable distance particularly when he is having diarrhea" (Tr. 298). Dr. Filka further explained that her opinion was based on Plaintiff's history that he gave her and her physical examination (Tr. 298).

On August 6, 2010, Dr. Robert Spangler conducted a consultative psychological examination (Tr. 300-04). Plaintiff primarily complained of physical ailments and symptoms of depression (Tr. 301). Plaintiff acknowledged that he currently worked 24 hours per week as a guard (Tr. 301, 304), and indicated that he was full-time but went to part-time in May 2010 (Tr. 302). Dr. Spangler indicated that Plaintiff generally understood the instructions for each task and demonstrated good concentration; that his social skills were adequate; and that he related well (Tr. 300, 303). Dr. Spangler concluded that Plaintiff had "mild depression" and no impairment-related mental limitations (Tr. 304). Dr. Spangler assessed Plaintiff's GAF at 65 (Tr. 304).

3

A state agency physician and psychologist subsequently reviewed the record in August 2010, and provided opinions on Plaintiff's functional capacity (Tr. 305-31). Dr. Carole Kendall, the state agency psychologist, completed the checklist of her summary conclusions (Tr. 319-20), and offered an opinion on Plaintiff's mental work-related activities based on her checklist (Tr. 321-22). Specifically, Dr. Kendall opined that Plaintiff could understand and remember simple and detailed tasks but could not make independent decisions at an executive level (Tr. 322). She also opined that Plaintiff could concentrate and persist on such tasks for a two hour period in an 8-hour day with routine breaks (Tr. 322). Dr. Kendall opined that Plaintiff could interact with the public, co-workers, and supervisors, and he could adapt to changes and set independent goals (Tr. 322). The state agency physician, Dr. Anita Johnson, indicated that Plaintiff could perform medium work activity (Tr. 323-31).

Subsequent records reveal further treatment at the VAMC, but these records did not suggest disability (Tr. 346-56, 386-472, 494-650). In February 2011, a VAMC physician indicated that the MRI of his cervical spine showed "some very minor degenerative changes and a spur" (Tr. 528). In March 2011, a VAMC physician indicated that Plaintiff's x-ray confirmed the presence of degenerative changes in his neck (Tr. 519). In April 2011, his EMG revealed only mild results (Tr. 512). In April 2011, Plaintiff complained of diarrhea related to his IBS, and that a viral infection from the week before exacerbated his symptoms (Tr. 509). The VAMC attendant recommended Imodium for his diarrhea and no limitations were assigned (Tr. 511). Plaintiff did not mention IBS symptoms when he saw a urologist in May 2011 (Tr. 500).

Plaintiff also was examined by a VAMC physician to evaluate his mental health (Tr.538), and in January 2011, the VAMC physician noted, inter alia, that Plaintiff's judgment and insight were fair, and his thought processes were logical and goal directed (Tr. 537-38). Although the physician diagnosed Plaintiff with a mood disorder, he did not assign any limitations (Tr. 538). The physician examined Plaintiff in March and May 2011, again diagnosing Plaintiff with a mood disorder, but did not assign any functional limitations (Tr. 501-02, 516-17).

Although Plaintiff continued to seek therapy from a VAMC social worker, the social worker also did not suggest any limitations (Tr. 386-89, 505-07, 513-14, 521-23). In December 2010, Plaintiff told the social worker about physical issues, and that he has missed one month of work due to pain (Tr. 389). The social worker "provided supportive therapy" and did not suggest any limitations (Tr. 389). In February 2011 and April 2011, the social worker indicated that Plaintiff talked about continued stress at work and was advised to continue therapy (Tr. 514, 522-23). In May 2011, the social worker indicated that Plaintiff discussed his "continued difficulty working with his physical difficulties," and she advised Plaintiff to engage in "at least 2 enjoyable activities daily to decrease depression and anxiety" (Tr. 506).

The record contains other VAMC records that relate to the relevant period, i.e., prior to August 30, 2011, but these records were submitted to the Appeals Council (Tr. 899-957). For instance, these records show that on August 29, 2011, one day before the ALJ issued his decision, the VAMC was evaluating Plaintiff's application for VA disability benefits based on his neck and shoulder condition (Tr.

4

899-931). The evidence submitted to the Appeals Council also shows that Plaintiff continued to seek therapy from a VAMC social worker on and after June 2011, but these records do not reveal any mental limitations (Tr. 948-49, 956). On June 13, 2011, Plaintiff told the VAMC social worker that it is difficult for him to work and that with his retirement, he "may be able to quit" (Tr. 956). On July 14, 2011, Plaintiff told the social worker that he quit his job because he could no longer physically do it (Tr. 948).

[Doc. 22, pgs. 2-6].

At the administrative hearing, the ALJ asked the vocational expert ["VE"] A. Bentley Hankins to assume that the plaintiff "is only capable of sedentary work with no climbing of ladders, ropes or scaffolds. No more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching or crawling. Further assume he can't have any concentrated exposure to pulmonary irritants. Further assume he cannot perform work that requires acute hearing. Also assume that he cannot perform work that requires more than occasional handling and fingering with the right upper extremity. Mentally assume he's restricted to performing and maintaining concentration for only simple, routine, repetitive tasks." When the VE was then asked if there were any past relevant jobs that plaintiff had performed in the past that he could do with those limitations, the VE responded that "the only job would be that of a surveillance systems monitor." The ALJ began to ask a further question, but realized that at plaintiff's age and with his limitations, he would be disabled under the medical-vocational guidelines even if there was a significant number of other jobs which were not past relevant work that the plaintiff could perform with those limitations. [Tr. 44-45]. Plaintiff's able counsel then asked the VE if a person could do that job if they had to take unscheduled breaks away from the work station. The VE responded that "if those were unscheduled rest breaks, the restroom or whatever else it may be, if they had to unexpectedly be away from the monitor, you could not perform that. That's an essential function of that

5

job." [Tr. 47-48].

In his hearing decision, the ALJ found that the plaintiff had severe impairments of degenerative disc disease, irritable bowel syndrome ["IBS"], diabetes, asthma, hearing loss, obesity, depression and anxiety. He found those conditions "could reasonably result in some limitations regarding exertional activities. [Tr. 13].

He found that the plaintiff did not meet any of the "listed impairments in 20 CFR part 404, Supart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526." [Tr. 14]. He found the plaintiff's RFC to be an ability "to perform sedentary work...with no climbing of ladders/ropes/scaffolds; no more than occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching or crawling; no more than occasional handling and fingering with the right upper extremity; no concentrated exposure to pulmonary irritants; and he cannot perform work that requires acute hearing. He is able to perform and maintain concentration for only simple, routine, repetitive tasks." [Tr. 15].

He then discussed the various severe impairments and their effect on the plaintiff's RFC. With regard to the plaintiff's IBS, the ALJ noted that the record did not show plaintiff had sought treatment from a gastroenterologist. He noted plaintiff had IBS since age 22. He noted that the last time plaintiff had required emergency room treatment (intravenous liquid administration) for his IBS was in November of 2007. He noted that the plaintiff was working part time 24 hours per week as a security guard. He acknowledged Dr. Filka had diagnosed IBS "and [she] concluded that the claimant should have access to bathroom facilities in a reasonable distance." [Tr. 16]. Regarding the plaintiff's mental limitations, the ALJ noted that Dr. Spangler had "asserted that other than mild depression, the claimant has no impairment related to mental limitation." The ALJ found no more than a moderate

6

impairment in concentration, persistence and pace. It was because of plaintiff's hearing testimony as to the symptoms of his depression and anxiety that the ALJ "limited him to simple, routine, repetitive tasks." [Tr. 17-18].

He found that the plaintiffs severe impairments did not cause limitation to the extent alleged by plaintiff. He found plaintiff credible in his complaints to the extent they were consistent with the RFC finding. [Tr. 18].[2]

Physically, he gave "some weight" to Dr. Filka, as he did the State Agency consultants. Regarding plaintiff's mental condition, he gave great weight to the State Agency psychologists. He found that the plaintiff could perform his past relevant work as a surveillance systems monitor. Accordingly, he found that he was not disabled. [TR 18-19].

Plaintiff asserts various errors in the ALJ's adjudication. First, plaintiff contends that he did not make enough in earnings as a "surveillance systems monitor" for it to qualify as "past relevant work." Second, that job was actually as a security guard rather than sitting at a monitor. Third, the ALJ's limitation of plaintiff to simple, routine, repetitive tasks in the RFC and hypothetical question to the VE did not adequately account for the limitations from plaintiff's moderate difficulty in maintaining concentration, persistence and pace. Next, plaintiff asserts that he could not perform the job of systems monitor because of IBS and Dr. Filka's opinion that he would need easy and constant access to a bathroom in case it struck, noting that the VE testified that if that were the case, plaintiff could not perform the duties of systems monitor. Finally, plaintiff asserts that the ALJ erred in his finding that the plaintiff was not fully credible.

---

[2]To put it simply, it is apparent from the very restricted RFC that the ALJ believed the plaintiff far more than he did not believe him.

Before analyzing the plaintiff's arguments, the Court would point out that this case presents an unusual and somewhat cruel situation under the best of circumstances. At "Step Four" of the evaluation process, where plaintiff still carries the full burden of proof, if a person can return to their past relevant work, they are not disabled. Obviously, that requirement makes perfect sense. What makes this case different is that because of plaintiff's "advanced age," and his limitation to sedentary work, he would be disabled under the "grid." Therefore, the ability to do a past relevant job is the *only* way he is *not* entitled to benefits. In the majority of cases that reach this Court, the plaintiff is found to be incapable of past relevant work, but found at Step Five to be capable of substantial gainful activity either under the medical-vocational guidelines or through VE testimony that a substantial number of identified jobs exist in the national economy that the plaintiff could perform. Here, Step Five is not relevant or available, bringing with it the "comfort" of hundreds of thousands or millions of jobs being available in the national economy. This *one* job, as a surveillance systems monitor, with an unknown number of available jobs, is what this entire case turns on.

Past relevant work is defined in the applicable regulation as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1). The two questions plaintiff presents are whether the job was as a surveillance systems monitor or as a security guard, and whether he made enough money for it to have been "substantial gainful activity."

With respect to the first question, it seems clear from the testimony that a substantial part of the plaintiff's duties as a security guard was to watch surveillance monitors [Tr. 30].

8

It is also clear that surveillance systems monitor is a separate, distinct occupation, which is sedentary and within plaintiff's physical RFC as found by the ALJ.[3] If plaintiff had the training and experience to do the more strenuous job of "security guard," he could certainly perform the less strenuous job of a surveillance systems monitor. At best, this is harmless error, if error it be at all.

The second question is more complicated. The Social Security Administration in § 404.1574(b)(2)(ii)(B) of its regulations has determined "Earnings that will ordinarily show that you have engaged in substantial gainful activity." Section (b)(3)(1) states that "if your average monthly earnings are equal to or less than the amount(s) determined...we will generally consider that the earnings from your work...will show that you have not engaged in substantial gainful activity. We will generally not consider other information in addition to your earnings except in the circumstances described in paragraph (b)(3)(ii) of this section." That paragraph describes various examples of when other information will be considered. If a person is "in a position to control" when and what amount of wages are paid, such as when working for a close relative, the Administration will consider that. Other examples are when a person's "work is comparable to that of unimpaired people...who are doing the same or similar occupations as their means of livelihood..." and when "work, although significantly less than that done by unimpaired people, is clearly worth the amounts shown..." in the table referred to above.

Thus, we have substantial evidence to support the plaintiff's physical capabilities, and those physical capabilities would enable him to return to his work as surveillance systems

---

[3]The Court will address the issue of plaintiff's IBS later in this report and recommendation.

9

monitor. Plaintiff performed this job, first full time and then part time, from September 2009 through July 2011. It was work, for profit, and with his physical RFC he could have worked as a surveillance systems monitor on a full time basis. The Court concludes that this job met the requirements of substantial gainful activity.

Plaintiff next suggests that as a result of *Ealy v. Commissioner of Soc. Sec.*, 594 F.3rd 504 (6th Cir. 2010), and other cases, merely limiting a plaintiff to jobs which are "simple, routine, repetitive tasks" with only "gradual and infrequent changes in the work setting" and "no contact with the general public does not accurately describe the plaintiff's moderate functional restrictions in concentration, persistence or pace. Thus, states plaintiff, the ALJ cannot rely upon the hypothetical in his finding that jobs existed and that the plaintiff was not disabled.

In *Ealy*, the hypothetical asked by the ALJ to the VE was very similar to that used by the ALJ in the present case. He asked the VE to "assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings." *Id*. at 516. In that case, the ALJ was relying upon the opinion of a state agency psychologist. The Sixth Circuit noted that the ALJ stated that his assessment was "consistent" with that of the psychologist. The problem was that it was not. One of the state agency psychologist's specific findings was that the ability of Mr. Ealy to sustain attention to complete simple repetitive tasks was limited to [two-hour] segments over an eight hour day where speed was not critical." *Id*. The Court stated that for the ALJ's hypothetical to accurately describe Mr. Ealy's situation, it would have to state that "the speed of his performance could not be critical to his job." In the present case, there is no such special requirement, only a moderate limitation. While it is true that *Ealy* cites, somewhat in dicta, a district court case which held that where a claimant has

10

moderate limitations in concentration, persistence or pace, the hypothetical will never be adequate when it merely limits the claimant to simple, routine, unskilled work,[4] this Court is unwilling to make such a jump. Other district courts in the Sixth Circuit have declined to expand *Ealy* to this degree. *See, Jackson v. Commissioner of Soc. Sec.*, 2011 WL 4943966 (N.D. Ohio. 2011), and *Horsely v. Astrue*, 2013 WL 55637 (S.D. Ohio. 2013), and this Court finds their reasoning persuasive in this regard. The Court finds that the hypothetical question in the present case was adequate to express the limitations found by the ALJ, and that there was substantial evidence for those limitations.[5]

Plaintiff next asserts that the ALJ erred in not taking into account in his RFC and his question to the VE the effects of plaintiff's IBS. It is true that Dr. Filka, based upon plaintiff's history, opined that plaintiff "should always have access to bathroom facilities in a reasonable distance, particularly when he is having diarrhea." She did not do any examination herself of the plaintiff's gastrointestinal system other than noting "bowel sounds positive X4." [Tr. 296]. There was no restriction in this regard in the record from any other source.

The ALJ discussed the plaintiff's IBS extensively. He noted that plaintiff had not sought treatment from a gastroenterologist. He had gone to the emergency room in November of 2007. The ALJ also discussed that the plaintiff had symptoms of IBS since he was 22 years of age and had worked with this condition almost constantly either full or part time from 1994 until 2011.

---

[4] *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930-31 (E.D. Mich. 2005).

[5] It must be noted that Dr. Spangler found *no* limitations greater than "mild" and GAF of 65.

11

The ALJ did not accept all of Dr. Filka's opinion, particularly the asserted need to have a bathroom constantly available on a moment's notice, because of the plaintiff's treatment history for IBS, his work history in the past, and the lack of any detailed examination by Dr. Filka herself. Nothing suggested that his IBS had gotten worse over the years, or that it was more than an occasional problem. He simply found, as is his role, that the evidence did not support that limitation. Also, the fact that the VE testified that *if* the plaintiff had to take frequent, unscheduled bathroom breaks he could not perform the job of surveillance systems monitor, ads nothing in this regard. The Court finds that the ALJ did not commit error in omitting that requirement from his RFC and hypothetical.

Finally, the plaintiff asserts that the ALJ erred in not finding him fully credible. As previously stated, the ALJ believed far more of what plaintiff told him than not. Also, other than the fact plaintiff argues that the ALJ "should have determined whether there was objective medical proof establishing the presence of disabling pain..." etc., plaintiff is rather unspecific regarding which of plaintiff's statements the ALJ should have given full credibility to. In any event, the ALJ gave the plaintiff an RFC giving him the benefit of almost every doubt, beyond any treating or examining source or the State Agency. He noted plaintiff's daily activities. The determination of credibility is the job of the finder of fact, the ALJ, and the Court finds that he adequately explained his reasons, and was supported by substantial evidence.

As previously stated, this is difficult case because of the unusual posture plaintiff is placed in because of his age, RFC and past relevant work history. In the end, the ALJ was faced with following the regulations and applying them to plaintiff's situation. The Court does not perceive that the ALJ tinkered with the facts as he found them to deny plaintiff

disability.  He merely applied the law to those facts, and the harsh result was that plaintiff is not disabled within the meaning of the Social Security Act.

It is therefore respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 16] be DENIED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 21] be GRANTED.[6]

Respectfully submitted,

 s/ Dennis H. Inman
United States Magistrate Judge

---

[6]Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived.  28 U.S.C. 636(b)(1).